UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**BIMBO BAKERIES USA, INC.,**

Petitioner,

v.

**BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS, LOCAL 53,**

Respondent.

Civil Action No.: 24-9153 (ES) (MAH)

**OPINION**

---

**SALAS, DISTRICT JUDGE**

Before the Court is Petitioner Bimbo Bakeries USA, Inc.'s ("Petitioner" or the "Company") petition and motion to vacate an arbitration award, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (D.E. No. 1 ("Petition" or "Pet."); D.E. No. 2 ("Motion" or "Mot.")). Respondent Bakery, Confectionary, Tobacco Workers, and Grain Millers, Local 53 ("Respondent" or the "Union") filed an opposition (D.E. No. 5 ("Opp. Br.")),[1] and Petitioner filed a reply (D.E. No. 6 ("Reply Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Petitioner's Motion to Vacate the Arbitration Award is **DENIED**, and Petitioner's Petition is **DISMISSED**.

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a Delaware corporation headquartered in Horsham, Pennsylvania and is the

---

[1]    Petitioner named Respondent as "Bakery, Confectionery, Tobacco Workers and Grain Millers, Local 53" in this action (*see* Pet.), but Respondent refers to itself in its opposition brief as "Local 53, Bakery, Confectionery, Tobacco Workers, and Grain Millers International Union (Local 53)" (Opp. Br. at 1).

American corporate arm of the Mexican multinational bakery product manufacturing and distribution company Grupo Bimbo.  (Pet. ¶ 4).  Respondent is a labor union and is headquartered in Rutherford, New Jersey.  (*Id.* ¶ 5).  Respondent "represents production, maintenance, and receiving employees" at Petitioner's Albany Bread Plant (the "Facility").  (*Id.* ¶ 6).

For many years, Petitioner and Respondent "have been parties to multiple collective bargaining agreements" ("CBAs") that cover "six bargaining units at multiple facilities."  (*Id.* ¶ 6).  The specific CBA applicable to the instant action became effective on June 8, 2019, expired on June 7, 2024, and was being renegotiated at the time of the filing of the Petition.  (*Id.*; *see also* D.E. No. 1-4 (the "CBA")).

By way of brief background, on June 17, 2021, Petitioner's former employees Tahir Khan ("Khan" or the "Grievant") and Abbas Hussein ("Hussein")[2] were involved in a physical altercation at the Facility.  (Pet. ¶ 8).  That same day, Petitioner issued Khan a written employee conduct notice stating he was involved in a physical altercation with another employee and was "suspended pending determination."  (*Id.* ¶¶ 8–9; *see also* D.E. No. 1-5).  A few days later, on June 22, 2021, Respondent filed a grievance alleging that Petitioner improperly disciplined Khan by terminating him for his involvement in the physical altercation with Hussein (the "Khan Grievance").[3]  (Pet. ¶ 9; *see also* D.E. No. 1-6).  The underlying arbitration proceedings centered around the Khan Grievance, both the merits of the grievance, as well as whether the grievance was timely submitted to arbitration.  (*See generally* Pet.; Mov. Br.).

On July 7, 2021, a "Step 3" meeting was held for the Khan Grievance.  (Pet. ¶ 12).  Following this meeting, Petitioner advised Union Business Agent Calvin Williams ("Williams")

---

[2]    Both Khan and Hussein worked at Petitioner's location in Albany, New York, and both were members of the Union.  (Opp. Br. at 1).  Neither Mr. Khan nor Mr. Hussein are parties to this action.

[3]    Respondent also filed a separate grievance on behalf of Hussein (*see* Pet. ¶ 9; D.E. No. 1-7), but because the instant Petition and Motion solely involve the Khan Grievance, the Court will focus on the Khan Grievance herein.

that Khan's termination was upheld.  (*Id.* ¶ 13).  A week or two later, Williams informed the Union President, Joyce Alston ("Alston"), about Petitioner's decision regarding Khan's discharge.  (*Id.* ¶ 15).  At some point after this discussion, Respondent asked Petitioner "to reconsider its decision concerning [Khan], but [Petitioner] maintained that [Khan] and Hussein were terminated."  (*Id.*).  "At various times over the following months," Alston engaged in settlement discussions with certain Company officials during which she sought to have Khan reinstated and asked for the Company to resolve the matter, but the Company denied her requests.  (*Id.* ¶ 17).

In or around August or September 2021, Respondent notified Petitioner that one of the witnesses to the altercation between Khan and Hussein had changed her statement, and it requested another meeting to discuss Khan's discharge.  (*Id.* ¶ 18).  Subsequently, on October 20, 2021, multiple Union and Company officials met via Zoom to discuss Khan's discharge, after which a Company official told Alston it would not reconsider Khan's discharge.  (*Id.* ¶¶ 19–20).  Following this October 2021 meeting, the parties continued to engage in informal discussions regarding Khan's termination.  (*See id.* ¶ 20; D.E. No. 1-3 at 4 & 7).  Then, in late January 2022, Alston testified that she had a discussion with the Company's Plant Manager who told her that they did not want Khan back.  (Pet. ¶ 21).  Alston testified this conversation prompted her to submit this matter to arbitration "[b]ecause [she] reached a point where it didn't matter what we said, they weren't changing their minds."  (*Id.*).  According to Petitioner, despite Respondent's repeated inquiries to have Petitioner alter its position regarding Khan's discharge, it never changed its decision regarding Khan's termination.  (*Id.* ¶ 22).

On January 25, 2022, Respondent filed a demand for arbitration regarding the Khan Grievance.  (Pet. ¶ 23; D.E. No. 1-10).  Subsequently, arbitration hearings were held on October 23, 2023, January 5, 2024, and January 31, 2024.  (Pet. ¶ 26; D.E. No. 1-8).  The Arbitrator, Dean

L. Burrell, Esq. (the "Arbitrator"), bifurcated the merits of the Khan Grievance from the threshold issue of whether the grievance was timely submitted to arbitration under the terms of the CBA. (*See* D.E. Nos. 1-2 & 1-3). On April 6, 2024, the Arbitrator issued his Order on Timeliness, finding the Khan Grievance was timely submitted to arbitration. (Pet. ¶ 31; D.E. No. 1-3). Thereafter, on June 17, 2024, the Arbitrator issued his Opinion and Award, incorporating and reaffirming his Timeliness Order and concluding, on the merits of the Khan Grievance, that there was no just cause for terminating Khan and ordering that he be reinstated with full backpay and benefits. (Pet. ¶ 34; D.E. No. 1-2). Petitioner now seeks to vacate the Arbitrator's June 17, 2024 Opinion and Award. (*See generally* Pet.; Mot.; D.E. No. 1-18 ("Mov. Br.")[4]; Reply Br.).

The crux of Petitioner's argument centers around whether Respondent's January 25, 2022 arbitration demand for the Khan Grievance was timely submitted under the CBA. (*See generally* Pet.; Mov. Br.; Reply Br.). The Arbitrator found that Respondent timely submitted the Khan Grievance to arbitration, but Petitioner disagrees and argues that the Arbitrator's decision must be

---

[4] Petitioner also submitted a certification and seventeen exhibits in support of its Petition. (*See* D.E. No. 1-1 (Certification of Glenn J. Smith, Esq., dated Sept. 13, 2024 ("Smith Cert.")); D.E. Nos. 1-2 through 1-17 (Exhibits A through P attached to the Smith Cert.)). The exhibits include the following documents: D.E. No. 1-2 (Smith Cert., Ex. A) is the Arbitrator's Opinion and Award dated June 17, 2024; D.E. No. 1-3 (Smith Cert., Ex. B) is the Arbitrator's Timeliness Order, dated April 6, 2024 (the "Timeliness Order"); D.E. No. 1-4 (Smith Cert., Ex. C) is the CBA between Petitioner and the Union, effective June 8, 2019, through June 7, 2024; D.E. No. 1-5 (Smith Cert., Ex. D) is a conduct notice Petitioner issued to its former employees, Khan and Hussein, on June 17, 2021; D.E. No. 1-6 (Smith Cert., Ex. E) is the Khan Grievance Respondent filed on behalf of Khan, dated June 22, 2021; D.E. No. 1-7 (Smith Cert., Ex. F) is a grievance Respondent filed on behalf of Hussein, dated June 22, 2021; D.E. No. 1-8 (Smith Cert., Ex. G) contains the transcripts from the three days of hearings that occurred on October 23, 2023, January 5, 2024, and January 31, 2024, in the underlying arbitration proceedings; D.E. No. 1-9 (Smith Cert., Ex. H) is a copy of Respondent's invitation to Petitioner for a Zoom meeting scheduled for October 20, 2021; D.E. No. 1-10 (Smith Cert., Ex. I) is a copy of Respondent's arbitration demand for the Khan Grievance, dated January 25, 2022, submitted to the Federal Mediation and Conciliation Service; D.E. No. 1-11 (Smith Cert., Ex. J) is a copy of email chain between Frank O'Hanlon and Respondent's counsel where the most recent email is dated February 7, 2023; D.E. No. 1-12 (Smith Cert., Ex. K) is a Memorandum of Agreement between Petitioner and Respondent, dated November 18, 2019; D.E. No. 1-13 (Smith Cert., Ex. L) is the collective bargaining agreement between Petitioner and Respondent, effective June 7, 2015, through June 7, 2019; D.E. No. 1-14 (Smith Cert., Ex. M) is a copy of Petitioner's February 29, 2024 brief on timeliness, filed in the underlying arbitration; D.E. No. 1-15 (Smith Cert., Ex. N) is a copy of Respondent's March 1, 2024 brief on timeliness, filed in the underlying arbitration; D.E. No. 1-16 (Smith Cert., Ex. O) is a copy of Petitioner's May 17, 2024 brief requesting reconsideration and on the merits, filed in the underlying arbitration; D.E. No. 1-17 (Smith Cert., Ex. P) is a copy of Respondent's May 13, 2024 brief on the merits, filed in the underlying arbitration.

vacated because he improperly "added a new contractual requirement to the CBA . . . in violation of his duty under the CBA, the issue submission, and applicable law" and by doing so, "effectively dispensed his own brand of industrial justice by rendering an Award that does not draw its essence from the CBA, that re-writes terms from the CBA, and that far exceeds his power under the CBA." (Mov. Br. at 1; *see also id.* at 6–14; Pet.; Reply Br.).

The Court will first briefly address the underlying arbitration proceedings and the Arbitrator's decision as they relate to the instant Petition and Motion before turning to address the parties' arguments.

### B.    The Arbitration Proceedings

Relevant to the underlying arbitration proceedings, Section 12 of the CBA outlines a four-step grievance procedure for adjudicating disputes between Respondent and Petitioner.  (*See* D.E. No. 1-4 § 12; *see also* Pet. ¶ 36).  Steps 3 and 4 of this procedure are most relevant to the instant Petition and Motion.  (*See generally* Pet.; Mov. Br.; Opp. Br.; Reply Br.).  Step 3 states as follows:

> If not satisfactorily adjusted then within five (5) working days from the date submitted to the Company in Step 2, it shall be referred to an authorized representative of the Company and the authorized representative of the Union (herein designated as the management committee and the union committee respectively).

(D.E. No. 1-4 § 12).  Then, Step 4 provides:

> If not satisfactorily adjusted then within ten (10) working days from the date it was submitted to the Company in Step 3, the grievance may be submitted to arbitration under the rules of the Federal Mediation Service or the New York State Board of Mediation both parties to bear the cost of such arbitration equally and to be bound by the outcome thereof.

> If any appeal from the above **Step 3 *end result*** is not filed for arbitration by the Union within fifteen (15) days from the date of the **Step 3 *meeting completion***, the grievance shall be deemed completed and will not be subject to the arbitration provisions of the Agreement. **This timeline requirement for submitting to**

5

> **arbitration may be extended with mutual agreement between the Company and the Union.**
>
> **The Arbitrator shall have no power to add to or subtract from, or modify the provisions of this Agreement.** Only one issue is to be arbitrated at a time. . . .

(*Id.*¶ (emphasis added)).  In 2019,[5] the parties negotiated to add the second paragraph of Step 4 above to the CBA, which added a provision that placed a time limit on when Respondent could file for arbitration—i.e., providing that "any appeal from the above **Step 3 *end result***" must be filed for arbitration "by the Union within fifteen (15) days from the date of the **Step 3 *meeting completion***."  (*See* D.E. No. 1-4 § 12 (emphasis added); *see also* D.E. No. 1-3 at 12).  The new language also provided that "[t]his timeline requirement for submitting to arbitration may be extended with mutual agreement between the Company and the Union."  (*See* D.E. No. 1-4 § 12; *see also* D.E. No. 1-3 at 12).  Prior to this 2019 amendment, there was no time limit on Respondent's right to seek arbitration after the Step 3 meeting, but this amendment imposed a new outer limit of fifteen days from the "Step 3 ***meeting completion***," which followed the "Step 3 ***end result***."  (*Contrast* D.E. No. 1-4 § 12, *with* D.E. No. 1-13 § 12; *see also* D.E. No. 1-3 at 12).

In the underlying arbitration proceedings, Petitioner challenged Respondent's arbitration demand for the Khan Grievance as untimely, which the Arbitrator first decided as a threshold issue that was bifurcated from the merits of the grievance.  (*See* Pet. ¶¶ 30–31; *see also* D.E. Nos. 1-3, 1-14 & 1-15).  Petitioner argued that Section 12 of the CBA required Respondent to demand arbitration within fifteen days of the Step 3 meeting, which it contended occurred on July 7, 2021, and at the latest, occurred on October 20, 2021, and therefore, it asserted that Respondent's arbitration demand for the Khan Grievance—submitted on January 25, 2022—was untimely

---

[5]    The parties' prior collective bargaining agreement was effective June 7, 2015, through June 7, 2019.  (*See* D.E. No. 1-13).

because it was filed outside of the allotted fifteen-day period. (*See* D.E. No. 1-3 at 8–10; D.E. Nos. 1-14 & 1-16). Respondent argued that the addition of the term "end result" in the 2019 amendment was significant because it allowed the parties to extend the timeliness of the arbitration demand from Step 3 submission to the completion of Step 3; as such, Respondent maintained that the arbitration demand for the Khan Grievance was timely because Petitioner did not provide anything in writing to signal that the Step 3 process was complete, and the parties continued to discuss the matter and acted in accordance with their past practice of extending timeliness when discussing settlement. (*See* D.E. No. 1-3 at 11; D.E. Nos. 1-15).

In his Timeliness Order, the Arbitrator found that Respondent's arbitration demand for the Khan Grievance, submitted on January 25, 2022, was timely for the following five reasons. (Pet. ¶ 30; D.E. No. 1-3). ***First***, the Arbitrator acknowledged that this arbitration involved the first time the 2019 amendment to the CBA was being applied. (D.E. No. 1-3 at 12). The Arbitrator noted that prior to the 2019 amendment, there was no time limit on Respondent's right to seek arbitration after the Step 3 meeting, but acknowledged that this amendment imposed a new outer limit of fifteen days at the Step 3 "end result," predicated on the Step 3 "meeting completion." (*Id.*).

***Second***, the Arbitrator found that the terms "end result" and "completion" in Step 4 of the CBA were ambiguous terms and thus found as relevant the facts, the parties' bargaining history, and the parties' past practice. (*Id.*). The Arbitrator further found that "[t]he purpose of the language was to keep matters timely while permitting the parties the flexibility to continue their long-term constructive relationship" and that by retaining the prior Step 3 language, the parties' past practice was applicable unless in conflict with the new language added in Step 4. (*Id.*).

***Third***, the Arbitrator found that the July 2021 meeting between the parties constituted the

Step 3 meeting and that the October 20, 2021 meeting was a continuation of the Step 3 meeting.[6] (*Id.*). The Arbitrator explained that his conclusion was "not inconsistent with the new 'completion' and 'end result' language" and "was in accordance with the parties' past practice of conducting another meeting after the initial [Step 3] meeting," even though ultimately Petitioner did not change its decision with respect to Khan. (*Id.*).

**Fourth**, the Arbitrator found that the new language added to Step 4 imposed obligations on both Respondent and Petitioner, which Petitioner failed to meet. (*Id.* at 12–13). Specifically, the Arbitrator noted that Petitioner did not—at any point after either the July 2021 meeting or the October 2021 meeting—do anything differently than it had done in the past to establish the newly required Step 3 "end result" and "meeting completion" had been reached. (*Id.* at 12). For example, Petitioner did not issue a termination letter or anything in writing to indicate the "Step 3 end result" or "Step 3 meeting completion." (*See id.* at 12–13). The Arbitrator reasoned that "[w]hile this may not have been the past practice, *some* evidence of finality must be provided under this new provision, especially in a termination case." (*Id.* at 13).

**Fifth**, and lastly, the Arbitrator noted that even though Alston acknowledged "having been told for months" that Petitioner was upholding Khan's discharge, "in the absence of more in compliance with the new provision she finally made a decision as to when [Petitioner's] decision was irrevocable." (*Id.*). The Arbitrator concluded, however, that Respondent should not have to guess when its obligation to demand arbitration arises under the CBA, that "this should not be a subjective decision." (*Id.*). Rather, the Arbitrator found, in light of the new language added to Step 4, which language Petitioner proposed, "there should have been some objective indicia" of

---

[6]    In finding that the October 2021 meeting was a continuation of the July 2021 Step 3 meeting, the Arbitrator implicitly found that the July 2021 meeting on its own did not constitute the "Step 3 end result" or "Step 3 meeting completion" for purposes of determining when the fifteen-day time period for demanding arbitration was triggered.

the Step 3 meeting completion that Petitioner did not provide. (*Id.*). Accordingly, the Arbitrator concluded that Respondent's January 25, 2022 arbitration demand for the Khan Grievance was timely filed. (*Id.*).

The parties submitted post-hearing briefs wherein Petitioner sought reconsideration of the Arbitrator's decision on timeliness and briefed the merits of the Khan Grievance. (Pet. ¶ 32; *see also* D.E. Nos. 1-16 & 1-17). On June 17, 2024, the Arbitrator denied Petitioner's motion for reconsideration and incorporated and reaffirmed his Timeliness Order. (D.E. No. 1-2 at 8–10). The Arbitrator reiterated that Respondent's arbitration demand was timely submitted, holding that Petitioner did not provide any objective indicia of the Step 3 meeting completion. (*Id.* at 8). In reaching that decision, the Arbitrator stated that he credited the January 2022[7] conversation between Alston and the Company's Plant Manager "as indicating to her the finality of [Petitioner's] decision" regarding Khan's termination, and thus "the time limit on [Respondent's] obligation to file for arbitration was not triggered until then." (*Id.*). The Arbitrator considered the evidence that both parties presented, which included sometimes conflicting testimony, and he assessed the witnesses' credibility regarding the nature of the various meetings that took place between the parties, what constituted a Step 3 meeting under the meaning of the CBA, and which meetings and discussions were a continuation of that process. (*See id.*). The Arbitrator reiterated that Petitioner did not complete the Step 3 process and did not clearly provide objective indicia of that process until January 2022. (*See id.*; *contrast* D.E. No. 1-4, *with* D.E. No. 1-13). The Arbitrator reasoned that Respondent "should not have to guess when finality attaches" and also found no evidence showing Petitioner was prejudiced by any delay. (D.E. No. 1-2 at 8–9).

---

[7]    The Arbitrator's Opinion states "January 20, 202**1**" (D.E. No. 1-2 at 8 (emphasis added)), but the Court understands this to be a typo in the Arbitrator's Opinion that instead refers to January 202**2**, in light of the January 202**2** dates identified in the Petition and the parties' briefs with respect to this conversation (*see, e.g.*, Pet. ¶¶ 21 & 39; Mov. Br. at 10–11; Opp. Br. at 3).

On September 13, 2024, Petitioner filed the instant Petition and Motion in this Court, seeking to vacate the Arbitrator's Opinion and Award. (Pet.; Mot.; Mov. Br.). On September 20, 2024, Respondent filed an opposition (Opp. Br.), and on September 30, 2024, Petitioner filed a reply (Reply Br.).

## II.    LEGAL STANDARD

"It is rare for [courts] to disturb an arbitration award." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013). Indeed, "[t]here is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). "[M]indful of the strong federal policy in favor of commercial arbitration, [the Third Circuit] begin[s] with the presumption that the award is enforceable." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (citation omitted), *aff'd*, 569 U.S. 564 (2013); *see also Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 173 (3d Cir. 2014) ("Our review of the arbitration award itself [] 'could be generously described only as extremely deferential.'" (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003))). As such, "[a] more deferential standard of review applies to the arbitration award itself[,]" and courts "do not entertain claims that an arbitrator has made factual or legal errors." *Davison Design & Dev., Inc. v. Scorza*, No. 24-1442, 2025 WL 789546, at *1 (3d Cir. Mar. 12, 2025) (alterations in original) (quoting *Sutter*, 675 F.3d at 219). "This is because when an arbitrator makes a 'good faith attempt' to interpret and enforce a contract, 'even serious errors of law or fact will not subject [its] award to vacatur.'" *Id.* (alteration in original) (quoting *Sutter*, 675 F.3d at 220).

Under § 301 of the Labor-Management Relations Act, "federal courts may entertain 'a suit to set aside an arbitration award entered pursuant to a collective bargaining agreement . . . if [the

suit] alleges that the award failed to draw its essence from the collective bargaining agreement or that the arbitrator exceeded his powers thereunder.'" *Teamsters Loc. Union No. 355 v. Ensinger Penn Fibre, Inc.*, No. 24-1037, 2025 WL 1098840, at *2 (3d Cir. Apr. 14, 2025) (alterations in original) (quoting *Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549, 555 (3d Cir. 1983)). "Judicial review of a labor-arbitration pursuant to a collective bargaining agreement is very limited." *United Steel Workers, AFL-CIO, CLC v. Int'l-Matex Tank Terminals*, No. 22-2491, 2022 WL 17343786, at *2 (D.N.J. Nov. 30, 2022) (quoting *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 272 F.3d 182, 185 (3d Cir. 2001)); *see also Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) ("The Supreme Court has frequently cautioned courts of the extremely limited role they play in reviewing the decision of an arbitrator. . . . It has said that '[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" (alteration in original) (citations omitted)).

Given this very limited and extremely deferential standard of review, courts "may only vacate an arbitration award where it was procured by corruption, fraud, or undue means; where there was evidence of partiality or corruption in the arbitrators; where the arbitrators were guilty of misconduct; or where the arbitrators exceeded their powers."[8] *Indep. Lab'y Emps.' Union, Inc.*, 11 F.4th at 215 (citation modified). Thus, courts "will not overturn an arbitration award unless

---

[8]    The Court notes that here, Petitioner does not make any arguments that the arbitration award should be vacated because it "was procured by corruption, fraud, or undue means"; that "there was evidence of partiality or corruption in the [A]rbitrator[]"; or that the Arbitrator was "guilty of misconduct." *See Indep. Lab'y Emps.' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 215, 210 (3d Cir. 2021) (citation modified); (*see also* Pet.; Mov. Br.; Reply Br.). Thus, the Court solely analyzes the instant Petition and Motion based on Petitioner's arguments that the Arbitrator exceeded his authority under the CBA and evinced a manifest disregard for the CBA, and in so doing dispensed his own brand of "industrial justice." (*See* Mov. Br. at 1 & 6–14); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Indep. Lab'y Emps.' Union, Inc.*, 11 F.4th at 215.

[they] conclude there is a 'manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop.'" *Id.* (citation omitted). "As a general rule, [courts] must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement[.]" *Brentwood Med. Assocs.*, 396 F.3d at 241 (citing *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)). This "review is extraordinarily narrow: [courts] do not review the merits of the award or correct factual or legal errors." *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citing *Garvey*, 532 U.S. at 509); *see also Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 279–80 (3d Cir. 2004) (same). "Instead, given that the parties to the collective bargaining agreement bargained for a procedure in which an arbitrator would interpret the agreement, [courts] must defer to the arbitrator's factual findings." *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citation modified) (citations omitted).

Thus, even if the court is "convinced [the arbitrator] committed serious error," it "may not vacate an award except in rare instances." *Id.* (citation omitted). Therefore, courts "will not disturb an arbitration award 'even if [they] find the basis for it to be ambiguous or disagree with the arbitrator's conclusions under the law." *Brentwood Med. Assocs.*, 396 F.3d at 241 (citation modified) (quoting *Citgo Asphalt Ref. Co. v. Paper, Allied–Indus., Chem. & Energy Workers Int'l Union Loc. No. 2–991*, 385 F.3d 809, 816 (3d Cir. 2004)). Similarly, courts "cannot vacate 'an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement[.]'" *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (quoting *Brentwood Med. Assocs.*, 396 F.3d at 241). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Major League*

*Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation omitted); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000))); *United Steel Workers, AFL-CIO, CLC*, 2022 WL 17343786, at *2 (stating a court "may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one" (citation omitted)).  "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough." *Oxford Health Plans LLC*, 569 U.S. at 572.

Rather, courts "must uphold an award as 'draw[ing] its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.'" *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citation omitted).  Thus, "the sole question for [courts] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC*, 569 U.S. at 569; *see also id.* at 571–72 (stating that Section 10(a)(4) of the FAA "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly").  In other words, "[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Garvey*, 532 U.S. at 509 (citation omitted).  "If 'a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.'" *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (quoting *Brentwood Med. Assocs.*, 396 F.3d at 241).

In sum, "a court can only vacate an arbitrator's award 'if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement.'" *Citgo Asphalt Ref. Co.*, 385 F.3d at 816 (quoting *Exxon Shipping Co.*, 73 F.3d at 1291). "An arbitrator's decision need be neither wise nor internally consistent." *Id.* (quoting *Exxon Shipping Co.*, 73 F.3d at 1297). This "decision is 'subject to a standard of only minimal rationality.'" *Id.* (quoting *Exxon Shipping Co.*, 73 F.3d at 1297). Accordingly, "[t]he party seeking to overturn an award bears a heavy burden" given the "exceptional deference" conferred to arbitration decisions. *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d Cir. 2010) (citation omitted); *see also France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022) ("It's a steep climb to vacate an arbitration award.").

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

Petitioner states the Court has jurisdiction over the instant action under 29 U.S.C. § 185 and 28 U.S.C. § 1331. (Pet. ¶ 2). Respondent does not dispute that this Court has jurisdiction over this matter. (*See* Opp. Br.). District courts have subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Cintron v. Prosper, Inc.*, No. 17-11530, 2018 WL 1003267, at *1 (D.N.J. Feb. 20, 2018). This action arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Additionally, the Third Circuit has stated that district courts have subject matter jurisdiction to vacate an "arbitration award under § 301 of the Labor Management Relations Act ('LMRA'), 29 U.S.C. § 185, along with the usual federal question jurisdiction accorded by 28 U.S.C. § 1331." *Screen Actors Guild - Am. Fed'n of Television & Radio Artists, AFL-CIO v. Sheridan Broad. Networks*, 841 F. App'x 369, 372 n.4 (3d Cir. 2020) (citing cases). Thus, the Court finds it has subject matter jurisdiction over this action under 29 U.S.C. § 185 and 28 U.S.C. § 1331. *See Teamsters Loc. Union No. 355*,

2025 WL 1098840, at *2 (citation omitted).

### B.    The Instant Petition and Motion

Petitioner seeks to vacate the Arbitrator's June 17, 2024 Opinion and Award for two main reasons.  (*See generally* Pet.; Mov. Br.; Reply Br.).  ***First***, Petitioner argues that contrary to the Arbitrator's findings and decision, Respondent did *not* timely submit the Khan Grievance to arbitration within fifteen days of the Step 3 meeting on July 7, 2021 because Respondent waited until January 25, 2022 to submit that grievance to arbitration.  (Mov. Br. at 9).  Similarly, Petitioner contends that even if the Court accepts the Arbitrator's finding that the October 2021 meeting was a continuation of the Step 3 meeting, Respondent's January 25, 2022 arbitration demand would still be untimely because it occurred months past the fifteen-day period.  (*Id.* at 10).  ***Second***, Petitioner asserts that the Arbitrator improperly "added a new contractual requirement to the CBA . . . in violation of his duty under the CBA, the issue submission, and applicable law" and by doing so, "effectively dispensed his own brand of industrial justice by rendering an Award that does not draw its essence from the CBA, that re-writes terms from the CBA, and that far exceeds his power under the CBA."  (*Id.* at 1; *see also id.* at 6–14; Pet.; Reply Br.).  Specifically, Petitioner contends by concluding that it must notify Respondent "***in writing*** of the finality of its Step 3 decision and that it must provide 'objective indicia' of same" (Mov. Br. at 2), the Arbitrator created a new extra-contractual requirement that does not exist in the CBA and exceeded his authority under Section 12 of the CBA, which states "[t]he Arbitrator shall have no power to add to or subtract from, or modify the provisions of this Agreement" (*id.* at 7; D.E. No. 1-4 § 12).  Thus, Petitioner contends it is clear that the Arbitrator's findings and decision to the contrary require vacatur.  (Mov. Br. at 1).

Additionally, Petitioner states that its decision regarding the Khan Grievance never

changed, and thus Petitioner argues that Respondent "was on notice that Step 3 had been completed" but "did not want to take 'no' for an answer." (*Id.* at 12). Petitioner asserts that "agreeing to hear [Respondent] out yet again on October 20, 2021 or listening to a request in January 2022 did not extend [Respondent's] time to file for arbitration." (*Id.* at 11). Petitioner submits it had not changed its mind regarding the Khan Grievance since July 7, 2021, and that Respondent's periodic inquiries about whether Petitioner would change its mind is not, and could not constitute, an extension of Respondent's time to file its arbitration demand under the new language. (*See id.* at 13–14). Petitioner contends Respondent never asked for or received an extension of its time to file the arbitration demand, and there was no mutually agreed upon extension that would have rendered Respondent's arbitration demand timely. (*See id.*).

In opposition, Respondent argues the Court should reject Petitioner's Petition and Motion because it contends Petitioner is essentially challenging the Arbitrator's factual findings that it complied with the CBA's requirements, which are for the Arbitrator alone and not for the Court to determine. (Opp. Br. at 5–10). Respondent also asserts that the CBA's language states that Respondent must submit an arbitration demand within fifteen days from the Step 3 meeting ***completion***, which language it contends is significant because "[i]t permitted the parties to extend the timeliness of a demand from the submission to Step 3 to the completion of Step 3" and here, Petitioner "simply never completed the Step 3 Process nor did [it] ever state in writing its decision anywhere during or after [Step 3]." (*Id.* at 8). Respondent states that as the Arbitrator pointed out, it "should not have to guess when the Step 3 process is completed." (*Id.*). Respondent contends that when the Step 3 meetings on July 7, 2021 and October 20, 2021 failed to resolve the issue regarding the Khan Grievance, the parties continued to discuss the matter, as had been their long-standing practice, and thus, even if the CBA's plain meaning was in doubt, "the practice of the

parties [wa]s entirely consistent with extending time limits when the parties [we]re continuing to discuss settlement." (*Id.* at 8–9).

In reply, Petitioner states that Respondent's opposition brief is "filled with inaccuracies unsupported by record evidence" and that Respondent's "inaccurate arguments" show how the Arbitrator's award is fatally flawed and must be vacated. (Reply Br. at 1; *see also id.* at 2–11). Petitioner argues the Arbitrator's factual findings require his award be vacated and the Khan Grievance to be dismissed as untimely. (*Id.* at 2). Petitioner states that by finding that it had to notify Respondent in writing of the finality of its Step 3 decision or provide some other "objective indicia" to indicate the Step 3 meeting completion, the Arbitrator created a new requirement not contained in the CBA "in pursuit of his own version of industrial justice." (*Id.*). Petitioner asserts that at no point was the time for filing an arbitration demand extended beyond the Step 3 meeting that occurred on July 7, 2021, and that even if the Court accepts the Arbitrator's finding that the October 20, 2021 meeting was a continuation of the Step 3 meeting, Respondent's arbitration demand for the Khan Grievance still was not timely filed within fifteen days of that date as it is undisputed the arbitration demand was not filed until January 25, 2022. (*Id.* at 4–5). Thus, Petitioner reiterates the Arbitrator's Opinion and Award must be vacated. (*Id.* at 11).

Here, the Court finds Petitioner has not met its heavy burden in showing that the Arbitrator's Opinion and Award should be vacated. As noted above, the Court's review in determining whether to vacate an arbitration award, and particularly one involving a collective bargaining agreement, "is extraordinarily narrow: [courts] do not review the merits of the award or correct factual or legal errors." *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citation omitted). Thus, the Court cannot vacate the Arbitrator's Opinion and Award "if it was based on an arguable interpretation and/or application of the collective bargaining agreement";

rather, it "may do so only 'if there is no support in the record for the Arbitrator's determination or if the award reflects manifest disregard of the agreement, totally unsupported by principles of contract construction.'" *Id.* (citation modified) (quoting *Brentwood Med. Assocs.*, 396 F.3d at 241). The Court must uphold the Arbitrator's "[A]ward as 'draw[ing] its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.'" *Id.* at *2 (second alteration in original) (citation omitted). This is true even if the Court finds the basis for the Arbitrator's decision to be ambiguous or disagrees with the Arbitrator's conclusions under the law. *Brentwood Med. Assocs.*, 396 F.3d at 241 (citation omitted).

The Arbitrator found Respondent's arbitration demand for the Khan Grievance, submitted on January 25, 2022, was timely because, *inter alia*, he found the terms "end result" and "completion" in Section 12 of the CBA were ambiguous. (D.E. No. 1-3 at 12; *see also* D.E. No. 1-2 at 8–9). Specifically, the Arbitrator noted that those terms in relation to the "Step 3 meeting" were part of a new paragraph added in a 2019 amendment and that "[t]he purpose of the language was to keep matters timely while permitting the parties the flexibility to continue their long-term constructive relationship." (D.E. No. 1-3 at 12; *see also* D.E. No. 1-2 at 8–9). Furthermore, by retaining "the prior Step 3 language[,] the past practice between the parties is therefore applicable unless in conflict with the new paragraph." (D.E. No. 1-3 at 12; *see also* D.E. No. 1-2 at 8–9). The Arbitrator further found that the parties' October 20, 2021 meeting was a continuation of the Step 3 meeting and "was in accordance with the parties' past practice of conducting another meeting after the initial third step meeting, and thus [wa]s not in conflict with nor supplanted by the new language." (D.E. No. 1-3 at 12; *see also* D.E. No. 1-2 at 8–9). In other words, the Arbitrator determined there were ambiguous terms in the new language added to Step 4 in Section

18

12 of the CBA, which terms are at the heart of the underlying dispute, and accordingly he looked to the parties' past practice to help resolve this ambiguity. (*See id.*). The Arbitrator concluded that this new language imposed obligations on both Respondent and Petitioner that Petitioner failed to meet in that it did not do anything different from the past to establish when the newly required "Step 3 end result" had been reached. (*See* D.E. No. 1-3 at 12; *see also* D.E. No. 1-2 at 8–9). The Arbitrator stated Respondent "should not have to guess" when this "end result" occurs or when finality attaches and thus when its obligation to demand arbitration arises. (D.E. No. 1-3 at 13; *see also* D.E. No. 1-2 at 8–9). Rather, the Arbitrator found that the addition of this new language was significant and required Petitioner, especially in a termination case, to provide "*some* evidence of finality" or "some objective indicia"—e.g., something in writing—to indicate the "Step 3 end result" and "Step 3 meeting completion" had been reached, which the Arbitrator found did not occur until January 2022. (D.E. No. 1-3 at 12–13; *see also* D.E. No. 1-2 at 8–9). Despite Petitioner's repeated references to the "Step 3 meeting" (*see generally* Mov. Br.; Reply Br.), the language in the CBA is "Step 3 meeting *completion*," which the Arbitrator found did not occur until January 2022 (*see* D.E. No. 1-2 at 8; *see also* D.E. No. 1-4 § 12). Thus, the Arbitrator concluded that Respondent's arbitration demand, submitted in late January 2022, was timely, and in so ruling, he credited the January 2022 conversation between Alston and the Plant Manager as objectively indicating to Alston the finality of Petitioner's decision regarding the Khan Grievance, e.g., the "Step 3 meeting completion," triggering the fifteen-day period under Step 4 of the CBA. (*See* D.E. No. 1-2 at 8). The Arbitrator as the factfinder "considered the evidence as presented by each side and on the basis of at times conflicting testimony, made [his] credibility determinations as to the nature of the various meetings, what constituted a step meeting[,] and which meetings and discussions were a continuation of that process." (*Id.*). The Court defers to the Arbitrator's

19

factual findings, as it must. *See Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citations omitted); *Davison Design & Dev., Inc.*, 2025 WL 789546, at *1.

Additionally, the Court finds that the Arbitrator's interpretation of the CBA—and specifically, the new language added to Step 4 of Section 12 of the CBA and the meaning of "Step 3 *end result*" and "Step 3 *meeting completion*"—"was based on an arguable interpretation and/or application of the" CBA. *See Brentwood Med. Assocs.*, 396 F.3d at 241 (citation omitted). As such, the Court cannot conclude that "there is no support in the record for the [A]rbitrator's determination" or that his award "reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." *Id.* Rather, the Court must uphold the Arbitrator's "award as 'draw[ing] its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.'" *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citation omitted); *see also U.S. Steel & Carnegie Pension Fund v. McSkimming*, 759 F.2d 269, 270 (3d Cir. 1985) (same). Here, the Court finds that the Arbitrator's interpretation of the CBA was rational based on the express terms, the context surrounding the 2019 amendment, and other indicia of the parties' intentions, including their prior course of dealing. Similarly, the Court does not find that the Arbitrator dispensed "his own brand of industrial justice" in his decision, as applied to the facts of the underlying arbitration, particularly in light of the extremely deferential standard of review. Additionally, the Court does not find that the Arbitrator exceeded his authority in concluding that the "Step 3 *end result*" and "Step 3 *meeting completion*" language was ambiguous and that, in light of this newly added language, there must have been some objective indicia to indicate that finality had been reached, something different than what had occurred prior to the 2019 amendment. Further, in determining whether an award draws its essence from the

collective bargaining agreement, "[t]his inquiry is not circumscribed by a rigid and mechanical examination of the text of the" agreement. *Indep. Lab'y Emps.' Union, Inc.*, 11 F.4th at 216. Instead, courts' "narrow scope of review arises from the recognition of the realities of the relationship between labor and management"; indeed, "[t]oo many unforeseeable contingencies may arise in an industrial setting for [courts] to mechanically reject an arbitrator's interpretation of a collective bargaining agreement." *Id.* Rather, collective bargaining "agreements are often comprehensive resolutions of competing interests within the complex environment of a workplace that often has competing economic, managerial, and interpersonal dynamics." *Id.*

Even if the Court disagreed with the Arbitrator's interpretation of the CBA and/or his factual findings, this alone would not warrant vacating the Arbitrator's award. *See PPL Elec. Utilities v. IBEW Loc. 1600*, No. 24-0072, 2025 WL 2056870, at *3 (E.D. Pa. July 21, 2025). Similarly, even if the Court found factual or legal errors outside of what is proscribed above and/or found that it would have interpreted the CBA differently, this too would not warrant vacating the Arbitrator's award. *See Indep. Lab'y Emps.' Union, Inc.*, 11 F.4th at 212, 216 ("As the Supreme Court has explained, 'courts have no business overruling [an award] because [our] interpretation of the contract [may differ].' . . . [A]n arbitrator must be able to look to the practices of the industry and the shop—including past arbitration agreements and company statements—in addition to a CBA in adjudicating a labor dispute. Accordingly, we uphold arbitration awards as long as 'they are not in "manifest disregard of the law" and can be rationally derived from the permissible sources of law.'" (alterations in original) (citations omitted)); *Simpson v. APA Transp. Corp.*, No. 81-2327, 1981 WL 2241, at *4 (D.N.J. Oct. 20, 1981) ("[I]t is not for the court to overturn the finding of an arbitrator merely because it might have arrived at a different conclusion given the same facts and testimony."); *see also Oxford Health Plans LLC*, 569 U.S. at 573 ("The arbitrator's

construction holds, however good, bad, or ugly.").  Indeed, "the question of interpretation of the collective bargaining agreement is a question for the arbitrator." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).  "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.*  Additionally, "[l]ong-established labor law does not allow [courts] to take the view that 'an employee's claim must fail unless he [or she] can point to a specific contract provision upon which the claim is founded.'" *Indep. Lab'y Emps.' Union, Inc.*, 11 F.4th at 216 (quoting *United Steelworkers of Am.*, 363 U.S. at 579).

Petitioner's reliance on *StoneMor, Inc. v. The International Brotherhood of Teamsters, Local 469* does not persuade the Court that vacatur is required.  107 F.4th 160 (3d Cir. 2024).  Petitioner cites to *StoneMor* in support of its argument that a district court can vacate an arbitration award when the arbitrator evinces "a manifest disregard for the underlying collective bargaining agreement[.]"  (Reply Br. at 7 (citing *StoneMor*, 107 F.4th at 160)).  In *StoneMor*, the collective bargaining agreement provided a grievance procedure that gave the union ten days to file a grievance regarding "a disagreement 'as to the interpretation of or alleged violation of' the [a]greement[,]" which grievance procedure was binding and mandatory upon ratification. *StoneMor, Inc.*, 107 F.4th at 161–62, 164.  The agreement in *StoneMor* was ratified on October 5, 2020, but was not executed until December 29, 2020.  *Id.* at 162.  On January 5, 2021, the union filed a grievance over the meaning of a disputed wage provision, which was filed seven days after the agreement was formally executed, but more than ninety days after the agreement had been ratified. *Id.*  The arbitrator in *StoneMor* found the grievance to be timely submitted, reasoning that the disputed wage provision in the agreement was unresolved between ratification and execution

of the agreement and that "it was reasonable that the Union would ensure that the [originally agreed-upon] language was incorporated in the [final Agreement] before it filed a grievance." *Id.* at 162 (alterations in original). The district court granted the petitioner's motion to vacate that arbitrator's award, finding that the agreement was enforceable as soon as it was ratified and noting that the union agreed with this finding; the court further found that the ten-day period to file a grievance was triggered as of the *ratification* date in October 2020, rather than the later *execution* date in December 2020, per the agreement's plain language. *Id.* Thus, the court concluded that the January 2021 grievance filing was untimely because it was not submitted within ten days of the ratification date, i.e., October 2020. *Id.* The Third Circuit affirmed, agreeing that the provision regarding the ratification of the agreement became binding in October 2020 rather than at the later execution date in December 2020 and that this language was "crystal clear." *Id.* at 163. Thus, the Third Circuit agreed with the district court that the union's January 2021 grievance was not timely filed because it was not filed within ten days of the ratification date rather than the execution date. *Id.* The Third Circuit further noted that there was "no 'reasonableness' exception to the grievance procedure in the [a]greement" and thus the arbitrator's holding "was not based on anything in the [a]greement" and "directly contradict[ed] the [a]greement's express language setting ratification, and not execution, as the binding date for the [a]greement." *Id.* at 163–64.

Here, Petitioner argues that the Arbitrator, like the one in *StoneMor*, rewrote the CBA and manifestly disregarded the CBA provisions. (Reply Br. at 7). However, unlike in *StoneMor*, the Arbitrator's decision here was based on an interpretation of the ambiguous terms "end result" and "completion" in the CBA as applied to the specific facts regarding the parties' communications and interactions between July 2021 and January 2022, which decision did not contradict the express language in the CBA. In addition, unlike the clear language in the *StoneMor* agreement,

the terms "Step 3 *end result*" and "Step 3 *meeting completion*" were ambiguous terms that are not clearly defined in the CBA and thus are subject to different interpretations. The parties disagree over when the "Step 3 meeting completion" occurred, consequently triggering Respondent's deadline to file its arbitration demand. For the reasons stated above, the Arbitrator rationally found that objective indicia of the "Step 3 meeting completion" triggering event did not occur until January 2022 and thus concluded that Respondent's January 2022 arbitration demand was timely. Petitioner's disagreement with the Arbitrator's interpretation of the CBA and related factual findings is not sufficient for this Court to vacate the Arbitrator's Opinion and Award. As explained above, the Court cannot conclude that the Arbitrator's decision did not draw its essence from the CBA, and accordingly "it is without jurisdiction to consider the award further." *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (quoting *Brentwood Med. Assocs.*, 396 F.3d at 241). In other words, the arbitration award "withstands the minimal level of scrutiny appropriate for review" and does not show a "manifest disregard" for the CBA. *Indep. Lab'y Emps.' Union, Inc.*, 11 F.4th at 212; *Brentwood Med. Assocs.*, 396 F.3d at 241.

Therefore, Petitioner's motion to vacate the arbitration award is **DENIED**, and Petitioner's Petition is **DISMISSED**.[9]

## IV.    CONCLUSION

Based on the foregoing, Petitioner's Motion is **DENIED**, and Petitioner's Petition is **DISMISSED**. An appropriate Order accompanies this Opinion.

---

[9]      Petitioner also argues that Respondent's opposition brief is "replete with misstatements and erroneous citations." (Reply Br. at 8–10). The Court need not address this argument because its decision herein is based on a careful review of the Arbitrator's decision and the record before this Court under the applicable legal standard. Further, even if Petitioner's statements about Respondent's opposition brief are true, and even if the Arbitrator relied on those allegedly unsupported statements, that is not sufficient to vacate the arbitration award, since "[a]n arbitral award may not be overturned for factual error[.]" *News Am. Publ'n, Inc. Daily Racing Form Div. v. Newark Typographical Union, Loc. 103*, 918 F.2d 21, 24 (3d Cir. 1990).

**Dated: September 25, 2025**                          _/s/ Esther Salas_____
                                                      **Esther Salas, U.S.D.J.**